UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHARMANE D. THURMAND, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:18-CV-1140 (JCH) |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF CONNECTICUT, | : | JANUARY 30, 2019 |
| ET AL, | : | |
| Defendants. | : | |

**RULING ON ETHICS DEFENDANTS' MOTION TO DISMISS (DOC. NO. 15)**

**I.    INTRODUCTION**

Plaintiff, Charmane D. Thurmand ("Thurmand"), brings this claim alleging violations of Title VII of the Civil Rights Act, the First and Fourteenth Amendments to the United States Constitution, the Connecticut Fair Employment Practices Act ("CFEPA"), and state claims of defamation, false light, slander of credit, and negligent and intentional infliction of emotional distress.  See Complaint (Compl.) ¶ 1.

She names as defendants the University of Connecticut; Susan B. Herbst, the President of UConn; Mun Y. Choi, the Provost of UConn; Kent Holsinger, the Dean of the UConn Graduate School; Scott Jordan, the UConn Chief Financial Officer; Stephanie Reitz, the UConn Spokeswoman; Bruce Gelston, an investigator at UConn's Officer of Audit, Compliance, and Ethics; and Kimberly Hill, the UConn Associate Director for Community Standards (collectively "UConn Defendants").  Also named as defendants are Carol Carson ("Carson"). the Executive Director of the State of Connecticut Office of State Ethics; Thomas Jones ("Jones"), the Ethics Enforcement Officer at the Connecticut Office of State Ethics; and Mark Wasielewski ("Wasielewski"), the Deputy Enforcement Officer of the State of Connecticut Office of State Ethics

(collectively "Ethics Defendants"). Before the court is the Ethics Defendants' Motion to Dismiss ("Mot. to Dismiss") (Doc No. 15).

For the reasons set forth below, the Motion to Dismiss is granted.

## II. STANDARD OF REVIEW

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. Id. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. Id. However, when reviewing a motion to dismiss, the court must accept the factual allegations in the operative complaint as true and draw all reasonable inferences in the non-movant's favor. See Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012).

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. "Of course, it may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201." Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir.

1991). Such matters include facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

### III. FACTS

Thurmand was employed by UConn, as the UConn Graduate School's Diversity Officer, from October 1, 2012 to February 24, 2017. Compl. ¶ 17. She was also a Ph.D. candidate at the UConn Graduate School until her expulsion on May 19, 2017. Id. ¶ 19. Thurman assisted the Graduate School's Diversity Committee, which is responsible for awarding various fellowships, scholarships and grants. Id. ¶ 26.

Thurmand was accused of violating her employment code by, inter alia, deceiving Holsinger, the Dean of the UConn Graduate School, and illegitimately obtaining a fellowship for her husband. Id. ¶ 29. Thurmand alleges that the UConn Defendants conducted a "biased, racially [motivated,] and retaliatory investigation of the charges," and falsely found that the accusations of theft were well-founded. See id. The UConn Defendants conducted a similarly biased student conduct investigation, with the same conclusion. Id. ¶ 30. The UConn Defendants reported a false debt to collection and credit agencies. Id. ¶ 34. Thurmand faced a hostile work environment, and was subjected to a criminal investigation, suspended from her employment, denied admission to academic events, expelled from the Graduate School, and lost her employment at Smith College. Id. ¶ 35.

The UConn Defendants made numerous statements to media outlets regarding the investigations. In those statements, the UConn Defendants identified Thurmand by name, and repeated the allegations of impropriety against her. Id. ¶ 40. Thurmand

3

alleges that these statements were false and malicious, id. ¶ 41, and that non-minority employees who were similarly situated were treated differently, id. ¶ 42.

In March 2017, the Ethics Defendants initiated a state ethics complaint ("Ethics Complaint") against Thurmand, which Thurmand alleges was discriminatory and retaliatory, and done for the purpose of harassment. Id. ¶¶ 45–48. The Complaint alleges that the Ethics Defendants abused their authority by issuing illegitimate and defamatory subpoenas and disclosing that Thurmand was the subject of the Ethics Complaint. Id. ¶ 49. As a result, Thurmand lost her employment at Smith College. Id. ¶ 50, and suffered economic harm, humiliation and other emotional harms, loss of sleep, and continued professional harm. Id. ¶ 55.

## IV. DISCUSSION

### A. Claims Not Raised Against Ethics Defendants

Thurmand has made clear that certain claims in the Complaint are not raised against the Ethics Defendants. In her Memorandum in Opposition to the Ethics Defendants' Motion to Dismiss (Doc. No. 27) ("Mem. in Opp."), Thurmand notes that, (1) her Title VII claims in Counts One and Two; (2) her Fourteenth Amendment claim in Count Three; and (3) her claims under the CFEPA in Count Five, are not directed against the Ethics Defendants. See Mem. in Opp. at 11, 16, 20. Therefore, the court does not address the Ethics' Defendants' arguments as to Counts One, Two, Three, and Five, except to note that those Counts are not raised against the Ethics Defendants. Thurmand also notes that the Ethics Defendants are sued only in their

4

individual capacity. Id. at 11. Therefore, the court does not address any arguments as to official capacity claims.

B. Abandoned Claims

Thurmand failed to respond to certain arguments in the Ethics Defendants' Memorandum in Support of their Motion to Dismiss (Doc. No. 15-1) ("Mem. in Supp."). See Ethics Defendants' Reply in Support of their Motion to Dismiss (Doc. No. 33) ("Reply in Supp") at 1–2. Specifically, Thurmand failed to respond to the Ethics Defendants arguments in favor of dismissing Counts Eight (defamation), Nine (false light invasion of privacy), Ten (slander of credit), and Eleven (vicarious liability). Id. In her Memorandum in Opposition, Thurmand—who is represented by counsel—argues against dismissal of the claims brought pursuant to CFEPA, the claims of negligent and intentional infliction of emotional distress, and the claims of retaliation under the First Amendment of the United States Constitution and the Connecticut Constitution. See Mem. in Opp. at 16–19, 20–22. The Plaintiff's Memorandum makes no mention of the claims of defamation, false light invasion of privacy, slander of credit, or vicarious liability.

Courts in this Circuit have presumed that plaintiffs have abandoned their claims when they do not oppose a motion to dismiss them. Mansa v. United States, No. 3:16-CV-00644 VAB, 2017 WL 1239142, at *3 (D. Conn. Mar. 30, 2017) (citing Hanig v. Yorktown Central School District, 384 F.Supp.2d 710, 723 (S.D.N.Y. 2005); Karout v. McBride, No. 3:11CV1148 JBA, 2012 WL 4344314, at *1 n.1 (D. Conn. Sept. 21, 2012)); see also Thomas v. Connecticut Dep't of Correction, No. 3:14CV714 DJS, 2015

WL 3970833, at *3 (D. Conn. June 30, 2015) ("When a plaintiff's specific claim is attacked in a motion to dismiss, a plaintiff must rebut the defendant's argument against that claim or it shall be deemed abandoned.") (quoting Massaro v. Allingtown Fire District, No. 3:03–CV–00136 (EBB), 2006 WL 1668008, at *5 (D.Conn. June 16, 2006)).

Because Thurmand failed to respond in any way to the Ethics Defendants' arguments with respect to her claims of defamation, false light invasion of privacy, slander of credit, and vicarious liability, those claims are deemed abandoned, and are dismissed as asserted against the Ethics Defendants.

C. Injunctive Relief

Thurmand seeks both monetary and equitable relief. See Compl. at 16. By way of equitable relief, Thurmand seeks: (1) an injunction prohibiting the State of Connecticut Ethics office from continuing their investigation into Thurmand; (2) a declaratory judgment against the defendants[1]; and (3) "such other relief as in equity may pertain." Id. The Ethics Defendants argue that (1) Thurmand's claims for equitable relief are barred because she has sued the Ethics Defendants in their individual capacities, and (2) that, even if that were not the case, that the Younger abstention doctrine would bar such relief. Reply in Supp. at 3.

The equitable relief that Thurmand seeks—an order enjoining the State of Connecticut Ethics Office from continuing its investigation—may not be sought from the

---

[1] By the plain language of the request, the declaratory judgment is sought as to the University of Connecticut, not the Ethics Defendants. See Compl. at 16 ¶ 3 (requesting a "declaratory judgment against defendants; that UCONN publicly acknowledge that it was not able to substantiate any malfeasance by plaintiff").

Ethics Defendants in their individual capacity. As Thurmand acknowledges, "[t]he State of Connecticut is not a party to this case." Mem. in Opp. at 11. Nor, by extension, is the State of Connecticut Ethics Office. However, in carrying out investigations in the Ethics Office, the Ethics Defendants act in their official capacity as state employees, and an injunction to bar a continued investigation could only be brought against them in that official capacity. See Frank v. Relin, 1 F.3d 1317, 1327 (2d Cir. 1993) (holding that qualified immunity defense could not apply to claim for injunctive relief, where the equitable relief sought could be obtained against the defendant only in his official, not his individual, capacity); Wall v. U.S. Dep't of Justice, No. 3:09CV1066 DJS, 2010 WL 4923736, at *5 (D. Conn. Nov. 29, 2010) (holding that equitable relief could not be sought against officials in their individual capacity).

Because Thurmand may not seek to enjoin acts taken by the defendants in their official capacity, in a suit against them in their individual capacity, any claims seeking to enjoin the Ethics Defendants' official acts are dismissed. Because the court concludes that dismissal is warranted on that basis, it need not reach the question of Younger abstention.

The remaining federal claims against the Ethics defendants are those brought in Count Four for retaliation in violation of the First Amendment. See Compl. ¶¶ 77–82. To remedy these alleged violations, Thurmand seeks compensatory, punitive, and nominal damages. The Ethics defendants argue that: (1) absolute immunity bars any claims for damages against them in their individual capacity, and (2) in the alternative,

the Ethics Defendants are entitled to qualified immunity. See Mem. in Supp. at 10, 15. The court addresses each of these arguments in turn.

D. Absolute Immunity

The Ethics Defendants claim they are entitled to absolute immunity as to claims for money damages against them, in their individual capacities. Mem. in Supp. at 10. They argue that, because their functions are "analogous to those of a prosecutor," they should be able to claim absolute immunity with respect to such acts. Id. at 11 (quoting Butz v. Economou, 438 U.S. 478, 515 (1978). Thurmand responds that the Ethics Defendants "have very little in common with a prosecutor," and that absolute immunity does not apply to their actions. Mem. in Opp. at 14.

Absolute immunity extends to non-prosecutor officials when they are performing functions analogous to those of a prosecutor. Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). In determining whether agency proceedings are sufficiently similar to judicial proceedings to warrant absolute immunity, the Second Circuit employs a functional approach and looks to whether the actions taken by the official are "functionally comparable" to that of a judge or a prosecutor. DiBlasio v. Novello, 344 F.3d 292, 297 (2d Cir. 2003). Both the Supreme Court and the Second Circuit have held that "an agency official who decides to institute an administrative proceeding is entitled in such circumstances to absolute immunity, since that decision is 'very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.'" Id. (quoting Butz, 438 U.S. at 515).

In Butz, the Supreme Court explained that the immunities afforded to participants of judicial proceedings "stem[ ] from the characteristics of the judicial process rather than its location." Butz, 438 U.S. at 512. The Court noted that absolute immunity in judicial proceedings was necessary given the need for participants to perform their functions "without harassment or intimidation." Id. Moreover, the Court stressed that such proceedings included safeguards to reduce the need for damages actions, including: (1) "[t]he insulation of the judge from political influence[; (2)] the importance of precedent in resolving controversies[; (3)] the adversary nature of the process and[; (4)] the correctability of error on appeal." See id. The court further noted that advocates were restrained by both their professional, ethical obligations and the adversarial process. Id. The Court held that federal administrative agency proceedings shared enough of these characteristics to afford those involved in such proceedings absolute immunity, noting in particular the adversarial nature of such proceedings and the presence of independent triers of fact. See id. at 512–13.

Thurmand argues that the state ethics proceedings lack the safeguards of judicial proceedings, and that the Ethics Defendants' functions were not equivalent to those of a prosecutor. Whether the proceedings adequately safeguard a respondent's rights, and whether the Ethics Defendants functions were equivalent to that of a judicial or quasi-judicial officer, requires a review of the relevant state law.

Section 1-82 of title 1 of the Connecticut General Statutes provides the framework for the filing and investigation of complaints alleging violations of the Connecticut Code of Ethics for Public Officials ("Ethics Code"). See Conn. Gen. Stat.

§ 1-82. Upon filing of a complaint, which if filed by a third-party must be signed under penalty of false statement, the ethics enforcement officer "shall" conduct an investigation. Id. § 1-82(a)(1). A respondent must be given notice of any complaint within five days of its issuance. Id. The Office of State Ethics has the power to hold hearings, examine witnesses under oath, and issue subpoenas. Id. § 1-82(a)(2). The issuance of subpoenas requires either the approval of the Chairperson of the Citizen's Advisory Board, or the approval of a majority of that board. Id. The respondent has a right to appear as part of any investigation or probable cause hearing, to be heard and to provide evidence in her favor both during the pre-hearing investigation and at the probable cause hearing. Id. The respondent has the right to be represented by counsel and to examine and cross-examine witnesses at both the probable cause and violation hearings. Id.

While the initial complaint leading to an investigation may be made by an outside party or by the Office of State Ethics, a probable cause determination is made by an independent judge trial referee. Id. § 1-82(b). A violation hearing can take place only after a probable cause hearing, and a different judge trial referee from the one who rules on the existence of probable cause presides over the violation hearing. Id. At the violation hearing, the respondent has the right to be present, to present evidence, and to cross-examine witnesses. Id. The rules of evidence are "the same as in judicial proceedings." Id. A finding of a violation requires a two-thirds vote of the Citizen's Ethics Advisory Board. Id.

A respondent may appeal an adverse decision to the Connecticut Superior Court. Id. Finally, if no probable cause to proceed to a violation hearing is found, the State is required to pay the respondent's legal fees; if a complaint is brought with knowledge that it has no factual basis, a respondent "shall have a cause of action against the complainant for double the amount of damage caused thereby and, if the respondent prevails in such action, the respondent may be awarded by the court the costs of such action together with reasonable attorneys' fees." Id. § 1-82(c).

Here, as in Butz, it is critically important to the administrative process that the Ethics Office remains free to lodge complaints in order to "move forward with an administrative proceeding free from intimidation or harassment." Butz, 438 U.S. at 516. Were the members of the Office liable for personal damages as a consequence of their decision to issue such complaints, it would severely hamper the state's important interest in regulating its employees.

Moreover, while Thurmand argues that the ethics proceedings lack the "characteristics of the judicial process," see Mem. in Opp. at 13, the statutory framework rebuts that argument. Contrary to Thurmand's conclusory arguments that the Ethics Defendants are "clearly influenced by politics," Mem. in Opp. at 13, the officers are statutorily insulated from politics by limits on political party representation on the Board,

temporal limits on holding public office, and a prohibition against engagement in political activity.[2]  Reply in Supp. at 8–9.

Thurmand argues that the administrative process lacks a mechanism by which she could raise her claims, especially her constitutional claims.  Mem in. Opp. at 13.  But the administrative process, beyond initiation of the complaint, is adversarial, including the right of the respondent to challenge the complaint, with counsel, both before and after a probable cause determination.  Moreover, and directly contradicting Thurmand's claim that there are "no safeguards in the ethics statutes or 'appeal' process," see Mem. in Opp. at 13, respondents like Thurmand are afforded a right to appeal an unfavorable decision to the Superior Court, and, if a finding is made in their favor, are guaranteed payment of all attorney's fees.  See Conn. Gen. Stat. § 1-82(c).  A further safeguard against unfounded complaints is provided in the availability of a private right of action for double damages where a respondent can show, as Thurmand here alleges, that a complaint was lodged without a basis in fact.  Id.

Given the importance of maintaining the independence and discretion of the Ethics Office in issuing initial complaints of ethics violations free from intimidation, the

---

[2] Conn. Gen. Stat. § 1-80 provides for the appointment and qualifications for members of the Citizen's Ethics Advisory Board.  The statute provides that "[n]o more than five members shall be members of the same political party."  Conn. Gen. Stat. § 1-80(a).  The statute further provides that:

> No member or employee of said board shall (1) hold or campaign for any public office; (2) have held public office or have been a candidate for public office for a three-year period prior to appointment; (3) hold office in any political party or political committee or be a member of any organization or association organized primarily for the purpose of influencing legislation or decisions of public agencies; or (4) be an individual who is a registrant as defined in subdivision (17) of section 1-91.

Id.

substantial similarity between the administrative process described in the relevant statutes and the judicial process, and the significant procedural safeguards in place, which mitigate the need for a right to seek damages against the Ethics Defendants, the court concludes that the Ethics Defendants are entitled to absolute immunity as to their decision to issue and pursue a complaint. Thurmand's claims for damages pursuant to section 1983 are therefore dismissed with prejudice.[3]

    E.    <u>Supplemental Jurisdiction and State Law Claims</u>

The remaining claims against the Ethics Defendants are state law claims for negligent and intentional infliction of emotional distress. The Ethics Defendants argue that this court should decline to exercise supplemental jurisdiction over these claims, because (1) all federal claims against the Ethics Defendants have been dismissed, and (2) the state law claims against the Ethics Defendants arise out of a difference nucleus of fact than the claims against the UConn Defendants. <u>See</u> Mem. in Supp. at 23–25. At this stage, however, the federal claims brought against the UConn defendants remain pending. Moreover, the Complaint alleges retaliatory behavior against both the UConn and Ethics Defendants, and further alleges: (1) "that the Ethics Complaint was initiated" to help the UConn Defendants, Compl. ¶ 46; and (2) that the Ethics Complaint was used by both the Ethics and UConn Defendants to harass Thurmand, <u>id.</u> ¶ 47. Finally, the ethics complaint against Thurmand is tied to the allegations that she improperly used her position at UConn for personal financial gain. The court concludes that the

---

[3] Because the court concludes that the Ethics Defendants are entitled to absolute immunity, it does not address the Ethics Defendants' arguments as to qualified immunity.

allegations have a common nucleus of fact, and that pendent party jurisdiction is therefore appropriate.

The Ethics Defendants argue that, even if pendent party jurisdiction is proper, the state law claims against them should be dismissed because (1) sovereign immunity bars the claims; and (2) to the extent that sovereign immunity does not bar the state law claims, absolute immunity or statutory immunity would. See Mem. in Supp. at 26, 29. Thurmand responds that sovereign immunity does not apply to her allegations, though she does not respond to the Ethics Defendants' arguments in the alternative, that absolute immunity or statutory immunity would bar her claims.

The court does not reach the question of sovereign immunity or statutory immunity, because under Connecticut law, absolute immunity would bar the state law claims against the Ethics Defendants. The Connecticut Supreme Court has expressly adopted the multifactor test used by the United States Supreme Court in Butz. See Gross v. Rell, 304 Conn. 234, 248 (2012) ("In considering whether [persons] ... should be accorded absolute judicial immunity, the United States Supreme Court has applied a three factor test, which we now adopt . . . under our state common law.") As noted above, see supra at 8–13, under that framework, the Ethics Defendants are entitled to absolute immunity as to the federal law claims against them. For the same reasons, the court concludes that Thurmand's state law claims of negligent and intentional infliction of emotional distress must be dismissed.

## V. CONCLUSION

For the reasons stated above, the Ethics Defendants' Motion to Dismiss (Doc. No. 15) is **GRANTED**.

**SO ORDERED.**

Dated this 30th day of January 2019 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge