UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| CHARMANE D. THURMAND, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:18-CV-1140 (JCH) |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF CONNECTICUT, | : | APRIL 22, 2019 |
| ET AL, | : | |
| Defendants. | : | |

**RULING ON UCONN DEFENDANTS' MOTION TO DISMISS (DOC. NO. 20)**

**I.  INTRODUCTION**

Plaintiff, Charmane D. Thurmand ("Thurmand"), brings this claim alleging violations of Title VII of the Civil Rights Act, the First and Fourteenth Amendments to the United States Constitution, Article First, Section 4 of the Connecticut Constitution, the Connecticut Fair Employment Practices Act ("CFEPA"), and state claims of defamation, false light, slander of credit, and negligent and intentional infliction of emotional distress. See Complaint (Compl.) ¶ 1.

She names as defendants the University of Connecticut ("UConn"); Susan B. Herbst, the President of UConn; Mun Y. Choi, the Provost of UConn; Kent Holsinger, the Dean of the UConn Graduate School; Scott Jordan, the UConn Chief Financial Officer; Stephanie Reitz, the UConn Spokeswoman; Bruce Gelston, an investigator at UConn's Officer of Audit, Compliance, and Ethics; and Kimberly Hill, the UConn Associate Director for Community Standards (collectively "individual UConn Defendants").  Also named as defendants are Carol Carson ("Carson"). the Executive Director of the State of Connecticut Office of State Ethics; Thomas Jones ("Jones"), the Ethics Enforcement Officer at the Connecticut Office of State Ethics; and Mark

Wasielewski ("Wasielewski"), the Deputy Enforcement Officer of the State of Connecticut Office of State Ethics (collectively "Ethics Defendants"). The court previously granted the Ethics Defendants' Motion to Dismiss ("Mot. to Dismiss") (Doc No. 15). See Ruling (Doc. No. 50). Now before the court is the UConn Defendants' Motion to Dismiss (Doc. No. 20).

For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part.

## II. STANDARD OF REVIEW

### A. 12(b)(1) Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving the existence of subject matter jurisdiction. Id. In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. Carter v. Healthport Techs., LLC, 882 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

### B. 12(b)(5) Insufficient Service

Pursuant to Federal Rule of Civil Procedure 4, an individual may properly be served either by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," or by doing any of the following:

> (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Connecticut law provides that "process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." Conn. Gen. Stat. § 52-57(a). Neither Connecticut law nor the Federal Rules provide for service by mail.

When a plaintiff fails to effect proper service upon a defendant and the defendant does not waive service of process pursuant to Rule 4(d), the plaintiff's action may be subject to dismissal pursuant to Rule 12(b)(5). "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." Khan v. Khan, 360 Fed. Appx. 202, 203 (2d Cir. 2010).

### C. 12(b)(6) Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a). To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard is not a probability requirement; the pleading

3

must show, not merely allege, that the pleader is entitled to relief. Id. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. Id. However, when reviewing a motion to dismiss, the court must accept the factual allegations in the operative complaint as true and draw all reasonable inferences in the non-movant's favor. See Littlejohn v. City of New York, 795 F.3d 297, 306 (2d Cir. 2015).

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in a complaint or in documents attached to a complaint as exhibits or incorporated in a complaint by reference. "Of course, it may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201." Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991). Such matters include facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

### III. FACTS

Thurmand was employed by UConn, as the UConn Graduate School's Diversity Officer, from October 1, 2012 to February 24, 2017. Compl. ¶ 17. She was also a Ph.D. candidate at the UConn Graduate School until her expulsion on May 19, 2017. Id. ¶ 19. Thurman assisted the Graduate School's Diversity Committee, which is responsible for awarding various fellowships, scholarships, and grants. Id. ¶ 26.

Thurmand was accused of violating her employment code by, inter alia, deceiving Holsinger, the Dean of the UConn Graduate School, and illegitimately obtaining a fellowship for her husband. Id. ¶ 29. Thurmand alleges that the UConn

4

Defendants conducted a "biased, racially [motivated,] and retaliatory investigation of the charges," and falsely found that the accusations of theft were well-founded. See id. The UConn Defendants conducted a similarly biased student conduct investigation, with the same conclusion. Id. ¶ 30. The UConn Defendants reported a false debt to collection and credit agencies. Id. ¶ 34. Thurmand faced a hostile work environment and was subjected to a criminal investigation, suspended from her employment, denied admission to academic events, expelled from the Graduate School, and lost her employment at Smith College. Id. ¶ 35.

The UConn Defendants made numerous statements to media outlets regarding the investigations. In those statements, the UConn Defendants identified Thurmand by name and repeated the allegations of impropriety against her. Id. ¶ 40. Thurmand alleges that these statements were false and malicious, id. ¶ 41, and that non-minority employees who were similarly situated were treated differently, id. ¶ 42.

In March 2017, the Ethics Defendants initiated a state ethics complaint ("Ethics Complaint") against Thurmand, which Thurmand alleges was discriminatory and retaliatory, and done for the purpose of harassment. Id. ¶¶ 45–48. The Complaint alleges that the Ethics Defendants abused their authority by issuing illegitimate and defamatory subpoenas and disclosing that Thurmand was the subject of the Ethics Complaint. Id. ¶ 49. As a result, Thurmand lost her employment at Smith College. Id. ¶ 50, and suffered economic harm, humiliation, and other emotional harms, loss of sleep, and continued professional harm. Id. ¶ 55.

## IV. DISCUSSION

### A. Service of Process

The UConn defendants argue that the court lacks personal jurisdiction over defendants Choi and Hill because Thurmand failed to properly execute service against them. See Mem. in Supp. at 7. As to Choi, Thurmand correctly notes that Choi executed a waiver of service. See Waiver of Service (Doc. No. 24). The Motion to Dismiss for lack of service as to defendant Choi is therefore denied. As to defendant Hill, Thurmand argues that service was accepted by an administrative assistant at Hill's workplace who claimed she was authorized to receive service on Hill's behalf. See Mem. in Opp. at 7. Hill responds that she "has never consented to anyone receiving service of process on her behalf." Reply in Supp. at 2. Because Hill never authorized an agent to receive service on her behalf, and because Thurmand did not deliver a summons and complaint to Hill either in person or at her usual place of abode, Thurmand failed to properly effect service on Hill. See Fed. R. Civ. P. 4; Conn. Gen. Stat. § 52-57(a). The Motion to Dismiss as to defendant Hill, on grounds of insufficient service, is granted.

### B. Title VII Claims (Counts One and Two)

In Count One and Two, Thurmand alleges that the UConn Defendants engaged in racial discrimination and retaliation, in violation of Title VII. See Compl. ¶¶ 56–70. The UConn Defendants seek to dismiss all Title VII claims against them in their individual capacity. See Mem. in Supp. at 7–8. Thurmand baldly asserts, without citation, that her claims are against her former employer, UConn, and that defendants

6

Herbst, Choi, Holsinger, and Jordan were supervisors acting on UConn's behalf. See Mem. in Opp. at 7. Insofar as Thurmand seeks to argue that the supervisors may be liable in their individual capacity, Title VII "does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers." See, e.g., Littlejohn, 795 F.3d at 313. Any Title VII claims against the individual UConn Defendants are therefore dismissed.[1]

The UConn defendants did not contest that the Title VII claims could proceed against UConn as a state employer, nor did they argue for dismissal of those claims. See Mem. in Supp. at 8 n.5 (conceding that there is "no dispute that Congress specifically provided that Title VII applies to the states; Counts One and Two based upon Title VII apply to UConn as a state employer."). The Title VII claims in Counts One and Two against UConn will therefore proceed.

### C. Section 1983 Claims (Counts Three and Four)

In Count Three, the Complaint alleges that the UConn defendants violated Thurmand's right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution. See Compl. at 11–12. In Count Four, the Complaint alleges that the UConn defendants violated Thurmand's right to free speech, as guaranteed by the First Amendment to the United States Constitution— applied to the states through the Fourteenth Amendment. Id. at 12. The court

---

[1] Plaintiff's counsel is advised in the future to rely on the law and not on unfounded assertions that run contrary to Second Circuit controlling precedent.

separately addresses the claims against UConn and the claims against the individual UConn defendants.

1. Section 1983 Claims Against UConn

Thurmand's allegations that UConn violated her right to equal protection and her right to free speech are brought pursuant to section 1983 of title 42 of the United States Code. Thurmand's claim fails, however, because states are not "persons" subject to liability under section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). While Thurmand concedes that "[t]he UCONN defendants are sued in their individual capacity only. . . [and] [t]he State of Connecticut is not a party to this case," see Mem. in Opp. at 7, the fact remains that UConn is a named party in this action, see Compl. at 1. UConn is a state university and is described in the Connecticut General Statutes as a "constituent unit of the state system of public higher education." See Conn. Gen. Stat. § 10a-109c(26). As has repeatedly been noted by courts in this district in the context of UConn's role as a state healthcare provider, UConn is legally an arm of the state and is not a person subject to suit under section 1983. See, e.g., Ramos v. Univ. of Connecticut Health Ctr., No. 3:17-CV-326 (VAB), 2018 WL 2465356, at *3 (D. Conn. June 1, 2018) ("Because UCONN is a state agency, it is not considered to be a person subject to suit under section 1983.")

Furthermore, the 1983 claims against UConn are barred by the Eleventh Amendment. Eleventh Amendment sovereign immunity "encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997). Because UConn is a state instrumentality, it is entitled to the

same Eleventh Amendment immunity from a suit for damages in federal court as the state itself. See, e.g., Arpino v. Bresciano, No. 3:18-CV-00183 (VAB), 2018 WL 6201706, at *3 (D. Conn. Nov. 28, 2018) (dismissing section 1983 claims against UConn on sovereign immunity grounds). Because UConn is not subject to suit under section 1983, and because it is entitled to Eleventh Amendment sovereign immunity, Thurmand's section 1983 claims against UConn are dismissed.

### 2. Section 1983 Equal Protection Claim Against Individual UConn Defendants

Thurmand also brings section 1983 claims against the UConn defendants, in their individual capacities, for violation of the First and Fourteenth Amendments to the United States Constitution. See Compl. at 11–12. As to the equal protection claims, Thurmand alleges that she was "subjected to selective enforcement" because she was treated differently from other similarly situated individuals, and that the differing treatment was based on her race. See Compl. ¶ 75.

The Second Circuit first recognized selective enforcement claims in LeClair v. Saunders, 627 F.2d 606, 609 (2d Cir. 1980).[2] To prevail on such a claim, a plaintiff must prove that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on

---

[2] The LeClair Court derived its test for selective enforcement claims from the Supreme Court's decision in Wood v. Strickland, 420 U.S. 308, 319–22 (1975). The Supreme Court has continued to recognize that selective enforcement of the law can be grounds for an Equal Protection Claim. See, e.g., United States v. Batchelder, 442 U.S. 114, 125 n.9 (1979) ("The Equal Protection Clause prohibits selective enforcement based upon an unjustifiable standard such as race, religion, or other arbitrary classification.") (internal quotation marks omitted); Whren v. United States, 517 U.S. 806, 813 (1996) ("We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race. . . . [T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause[.]").

the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995) (internal quotation marks omitted).  Thus, unlike in class of one claims, plaintiffs alleging selective enforcement claims "must prove that the disparate treatment was caused by the impermissible motivation.  They cannot merely rest on a showing of disparate treatment." Bizzarro v. Miranda, 394 F.3d 82, 87–88 (2d Cir. 2005) (emphasis in original) (noting that the Second Circuit has not yet resolved whether "malice is required" in class of one claims brought under Olech).

The Second Circuit has not established a precise standard for what it means to be "similarly situated" for the purpose of selective enforcement claims.  Some district courts have held that the similarity standard in selective enforcement cases is the same as the similarity standard in class of one cases, which requires plaintiffs to show an extremely high degree of similarity between themselves and their comparators.  See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 692–97 (S.D.N.Y. 2011) (collecting cases).  Other district courts, however, have applied a more lenient standard to selective enforcement claims.  See, e.g., Joglo Realties, Inc. v. Seggos, 229 F. Supp. 3d 146, 153 (E.D.N.Y. 2017).

Even under the more lenient standard, which requires "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases," Mosdos, 815 F. Supp. 2d at 696 (internal quotation marks omitted), Thurmand's equal protection claims are insufficiently pleaded.  The Complaint, in conclusory fashion,

10

alleges that Thurmand was treated differently from other similarly situated people. Compl. ¶ 75. However, the Complaint contains no allegations which, if taken as true, would support a conclusion that these unnamed persons were similarly situated to Thurmand. Indeed, it contains no allegations about the comparators at all.

In short, Thurmand "fails to allege why other individuals were similarly situated to [her]." Jones v. Bay Shore Union Free Sch. Dist., 666 F. App'x 92, 94 (2d Cir. 2016) (summary order) (emphasis in original) (citing Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 n.3 (2d Cir. 2002) (per curiam); Kamholtz v. Yates Cty., 350 F. App'x. 589, 591 (2d Cir. 2009) (summary order)) A plaintiff's "bare allegation that others were similarly situated is insufficient to survive a motion to dismiss." Jones, 666 F. App'x at 94. Thurmand's equal protection claim, brought pursuant to section 1983, is therefore dismissed.

3. Section 1983 First Amendment Claim against Individual UConn Defendants

Thurmand's allegations of retaliation in violation of the First Amendment, however, are adequately pleaded. To state a claim for retaliation in violation of the First Amendment, a plaintiff must plausibly allege "(1) his [or her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him [or her]; and (3) there was a causal connection between this adverse action and the protected speech." Montero v. City of Yonkers, New York, 890 F.3d 386, 394 (2d Cir. 2018). Where, as here, the plaintiff is a public employee, only speech made in the employee's capacity as a private citizen, on an issue of public concern, is protected by the First Amendment. See Jackler v. Byrne, 658 F.3d 225, 235 (2d Cir. 2011) (quoting

11

Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).  The defendants conceded for the purpose of the Motion to Dismiss that Thurmand's alleged she engaged in protected speech, so the court addresses only whether the Complaint plausibly alleged the second and third elements of the cause of action.  See Mem. in Supp. at 20.

The Complaint alleges that Thurmand publicly criticized UConn's discriminatory practices, including a "lack of standards" regarding the awarding of diversity scholarships, and "discriminatory policies and conduct toward minority students and candidates."  Compl. ¶¶ 20–21, 80.  As noted, the defendants did not contest whether these alleged statements were protected under the First Amendment  The Complaint also alleges that, as a result of her public criticism of UConn, the individual UConn defendants subjected Thurmand to harassment, false criminal charges, and false administrative charges. Compl. ¶ 22.  The Complaint details, among other allegations of misconduct, that (1) Herbst, Choi, Jordan, and Holsinger instigated a "retaliatory investigation" against Thurmand; (2) Herbst, Holsinger, Jordan, and Reitz falsely accused Thurmand of obtaining a fellowship for her husband; and (3) Gelston conducted a biased employee investigation into the allegations.  See id. ¶¶ 25–32.  These allegations, which at a Motion to Dismiss the court must take as true, are sufficient to allege that the individual UConn defendants took adverse actions against Thurmand, in retaliation for her criticism of UConn's discriminatory policies and lack of appropriate scholarship standards.

The UConn defendants argue that Thurmand's First Amendment claim should nonetheless be dismissed because they are entitled to qualified immunity.  State

officials are entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Edrei v. Maguire, 892 F.3d 525, 532 (2d Cir. 2018) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)).  While defendants may raise a defense of qualified immunity in a motion to dismiss, "[by] presenting [their] immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment[, the defendants] must accept the more stringent standard applicable to this procedural route." Id. (alterations in original) (quoting McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004)).  Therefore, the court accepts the Complaint's factual allegations as true and draws all reasonable inferences in the plaintiffs' favor, "including both those that support the claim and those that defeat the immunity defense." Id. (internal quotation omitted).

The defendants argue that they are entitled to qualified immunity because "the gravamen of [Thurmand's] allegations" is that the individual UConn defendants investigated claims of fiscal irregularities by Thurmand, and it was not clearly established that conducting an investigation violated any constitutional rights. See Mem. in Supp. at 13.  The defendants' arguments seek to rewrite the Complaint and are without merit.  The Complaint alleges that Thurmand publicly criticized UConn for its policies and procedures and that, because of that criticism, the individual defendants falsely investigated her and accused her of violating the student conduct code, conditions of her employment, and the criminal law. See Compl. ¶¶ 25–32.  The Complaint therefore alleges that Thurmand was retaliated against for her criticism of a

13

government entity.  Such retaliation would constitute a violation of her First Amendment rights, which rights were clearly established at the time of the retaliation.  See, e.g., Rosenblatt v. Baer, 383 U.S. 75, 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion."); Velazquez v. Legal Servs. Corp., 164 F.3d 757, 771 (2d Cir. 1999), aff'd, 531 U.S. 533 (2001) ("The strongest protection of the First Amendment's free speech guarantee goes to the right to [criticize] government or advocate change in governmental policy.").  While discovery may show otherwise, at this stage of litigation, taking the allegations in the Complaint as true, the defendants' Motion to Dismiss Thurmand's First Amendment claims on the basis of qualified immunity is denied.

    D.    Connecticut Constitutional Claim against UConn (Count Four)

In Count Four, Thurmand also alleges that the UConn defendants violated her rights under Article First, Section 4 of the Connecticut Constitution.  See Compl. ¶ 81.  The defendants argued in their Motion to Dismiss that Thurmand's claims should be dismissed because Connecticut has not recognized an individual cause of action under that section of the state constitution.  See Mem. in Supp. at 26–28.  Thurmand—who is represented by counsel—failed to respond to the UConn Defendants' arguments.  "A district court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" Jennings v. Hunt Companies, Inc., No. 18 CIV. 1793 (JFK), 2019 WL 1206699, at *2 (S.D.N.Y. Mar. 14, 2019) (quoting Felix v. City of New York, 344 F.Supp.3d 644, 654-55 (S.D.N.Y. 2018); see also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC, No. 08-CV-

14

442 TPG FM, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("[A] plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

However, the court finds that, despite Thurmand's failure to respond to the defendants' arguments, the Complaint can plausibly be read to seek relief under section 31-51q of the Connecticut General Statutes. That section provides for a cause of action against "[a]ny employer, including the state . . . who subjects any employee to discipline or discharge on account of the exercise . . . of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the [Connecticut] Constitution." Conn. Gen. Stat. § 31-51q. Claims under section 31-51q are limited to the plaintiff's employer, and liability does not extend to coworkers or supervisors. See Mercer v. Schriro, 337 F. Supp.3d 109, 141 (D. Conn. 2018) (collecting cases). The court therefore reads the Complaint as alleging that UConn violated section 31-51q of the Connecticut General Statutes.

Thurmand's claim under section 31-51q against UConn fails, however, because the Eleventh Amendment bars private suits against the state in federal court, unless the state waives its immunity. See Will, 491 U.S. at 66. "The State of Connecticut has not waived its Eleventh Amendment immunity to actions brought pursuant to Conn. Gen. Stat. § 31-51q in federal court." Faghri v. Univ. of Connecticut, No. 3:06-CV-01957 VLB, 2010 WL 2232690, at *4 (D. Conn. June 3, 2010) (citing Cook v. McIntosh, No. CIV. 3:97CV773 (AHN), 1998 WL 91066, at *6 (D.Conn. Feb. 20, 1998)). Any assertion of a claim against UConn under section 31-51q is therefore dismissed.

E.   CFEPA (Count Five)

In Count Five, Thurmand alleges that UConn violated CFEPA. Compl. ¶¶ 83–84. While the State of Connecticut has expressly waived sovereign immunity as to suits under CFEPA brought in the Connecticut Superior Court, see Conn. Gen. Stat § 46a–100, the waiver of sovereign immunity does not extend to the federal courts. See, e.g., Pawlow v. Dep't of Emergency Servs. & Pub. Prot., 172 F. Supp. 3d 568, 578 (D. Conn. 2016) (holding that waiver of sovereign immunity for CFEPA suits was "expressly limited to state court by the Connecticut legislature") (collecting cases). "A State's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984). Because Connecticut did not waive its sovereign immunity to suit under CFEPA in federal court, Thurmand's CFEPA claim against UConn is dismissed.

F.   Remaining State Law Claims

Thurmand's remaining state law claims are: (1) negligent infliction of emotional distress; (2) intentional infliction of emotional distress; (3) defamation; (4) false light invasion of privacy; (5) slander of credit; and (6) vicarious liability. As Thurmand concedes, see Mem. in Opp. at 19, Connecticut does not recognize a claim for slander of credit. Therefore, those claims are dismissed.[3] Thurmand also abandoned any claims of vicarious liability against the UConn defendants by failing to respond to **any** of

---

[3] Thurmand seeks leave to replead the slander of credit claims as claims of defamation. See Mem. in Opp. at 19. Even if the court were to allow Thurmand to so replead, the claims would be barred by common law sovereign immunity. See infra at 17–19.

the defendants' arguments in favor of dismissal of those claims. The defendants argued that Thurmand failed to allege that anyone acted as an agent for the individual UConn defendants, which is "necessary to impose vicarious liability on a defendant." Mem. in Supp. at 38 (citing Cefarrati v. Aranow, 154 Conn. App. 1, 29 (2014)). Thurmand failed to respond to the argument or demonstrate how the Complaint plausibly alleged an agency relationship between the individual UConn defendants and any other persons. The claims of vicarious liability are therefore deemed abandoned and are dismissed. See, e.g., Jennings, 2019 WL 1206699, at *2 (quoting Felix v. City of New York, 344 F.Supp.3d 644, 654-55 (S.D.N.Y. 2018).

As to the remaining claims, the UConn defendants argue that the claims should be dismissed on the basis of sovereign immunity, absolute immunity, qualified immunity, statutory immunity, and pursuant to Connecticut's Anti-SLAPP provision, section 52-196a of the Connecticut General Statutes. The UConn defendants first argue that the state claims against them should be dismissed pursuant to Connecticut common law sovereign immunity. Under Connecticut law, "[i]f the plaintiff's complaint reasonably may be construed to bring claims against the defendants in their individual capacities, then sovereign immunity would not bar those claims." Miller v. Egan, 265 Conn. 301, 307 (2003). To determine whether a claim has been brought against the state or against a defendant in his individual capacity, the court must examine four criteria, all four of which must be satisfied for the claim to be deemed to be against the state. See Kenney v. Weaving, 123 Conn. App. 211, 216 (2010) (citing Spring v. Constantino, 168 Conn. 563 (1975)).

17

The criteria are:

(1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability.

Id.

The parties agree that the first two criteria are met in this case: the UConn defendants are state officials, and the Complaint concerns matters in which they represented the state. See Mem. in Opp. at 17. The parties disagree, however, as to whether the third and fourth requirements are met in this case. As to the third requirement, "[w]hether a particular action is one against the state is not determined solely by referring to the parties of record." Kenney, 123 Conn. App. at 215–16 (citing Somers v. Hill, 143 Conn. 476, 479 (1956)). Even where a Complaint nominally is brought against defendants in their individual capacity, Connecticut courts have found the third requirement satisfied where plaintiffs sought damages for "injuries allegedly caused by the defendant for performing or not performing acts that are part of his official duties." Id. at 217.

The Complaint alleges that the individual defendants "instigated the original retaliatory investigation against [Thurmand]." Compl. ¶ 24. It further alleges that the defendants "falsely and maliciously declared plaintiff improperly obtained a fellowship for her husband." Id. ¶ 25. While Thurmand argues that the charges were false, and that the investigation was biased, retaliatory, and racially motivated, her state law claims derive from the defendants' actions in their roles as administrators and investigators employed by the State of Connecticut. Indeed, the Complaint repeatedly attacks the

18

basis of the investigations, the truth of the allegations against Thurmand, and the motivations of the administrators and investigators in instigating and pursuing the investigations and later procedures against Thurmand. At bottom, however, Thurmand's allegations are directed at the basis for, and the manner of execution of, investigations conducted by UConn—an arm of the state—by and through the individual UConn defendants. The court therefore concludes that the third requirement is met in this case, and that the state is the real party in interest.

Furthermore, the fourth requirement is met because a judgment against the individual defendants, for their roles in conducting the UConn investigations and carrying out their duties relevant to the investigations, would operate to control the activities of the state in carrying out its responsibilities to investigate allegations of fraud and theft. Thurmand's state law claims are therefore barred by sovereign immunity.[4] The Motion to Dismiss the remaining state law claims is granted. Because the court concludes that the claims are barred by sovereign immunity, it does not reach the UConn defendants' remaining arguments for dismissal.

---

[4] The court further notes that, even if Thurmand's NIED claims were viewed as individual capacity claims, and therefore were not barred by sovereign immunity, they would nonetheless be barred by statutory immunity. Section 4-165 of the Connecticut General statutes provides that "no state officer or employee shall be personally liable for damage or injury, not wanton, reckless, or malicious, caused in the discharge of his duties or within the scope of his employment." Conn. Gen. Stat. § 4-165. Negligence is, by definition, neither wanton nor reckless. See Martin v. Brady, 261 Conn. 372, 379 (2002) ("[T]o establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] is more than negligence, more than gross negligence." (second alteration in original). Because a claim of NIED necessarily alleges no more than negligence, and the Complaint does not allege that the UConn defendants acted outside the scope of their employment, any such claims would also be barred by statutory immunity.

## V. CONCLUSION

For the reasons stated above, the UConn Defendants' Motion to Dismiss (Doc. No. 20) is **GRANTED** in part and **DENIED** in part. As to UConn, the Motion to Dismiss is **GRANTED** as to Thurmand's 1983 claims (Counts Three and Four); Thurmand's Connecticut constitutional claim (Count Four); and Thurmand's state law claims (Counts Five, Six, Seven, Eight, Nine, Ten, and Eleven). The Motion to Dismiss is **DENIED** to the extent it seeks dismissal of Thurmand's Title VII claims against UConn (Counts One and Two). All other claims against UConn are dismissed with prejudice.

As to the individual UConn defendants, the Motion to Dismiss (Doc. No. 20) is **GRANTED** as to all claims against Hill for failure to effect proper service. As to the remaining individual defendants, the Motion to Dismiss is **GRANTED** as to Thurmand's Title VII claims (Counts One and Two); Thurmand's 1983 equal protection claim (Count Three); and Thurmand's state law claims (Counts Five, Six, Seven, Eight, Nine, Ten, and Eleven). The Motion to Dismiss is **DENIED** as to Thurmand's 1983 First Amendment Claim (Count Four). Thurmand may replead her 1983 equal protection claim within 30 days of this Ruling, if she has a legal and factual basis upon which to do so. All other dismissed claims are dismissed with prejudice.

**SO ORDERED.**

Dated this 22nd day of April 2019 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge